UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 JUL 13  P 1: 48

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Michael Francis Murray | ) EMERGENCY APPLICATION FOR |
| Petitioner | ) ERROR CORAM NOBIS |
| .v. | ) In Re; Case No. 83-00102-03-S |
| Kenneth W. Kaiser (S.A.C.) | ) |
| Boston Office of the F.B.I. | ) EX PARTE |
| & | ) |
| The UNITED STATES of America | ) |
| and all other Conspirators | ) |
| Known and Un-Known | ) |
| Respondent(s) | ) |

| | | |
|---|---|---|
| Pennsylvania state | ) ss | Equity, Admiralty / Maritime |
| Union County | ) | Venue and Jurisdiction |

## WRIT OF ERROR CORAM NOBIS

COMES NOW, Michael Francis Murray, hereinafter, 'Petitioner' in
the above captioned matter, appearing specially, in propria persona,
ex parte, to obtain redress for the deprivation of liberty and conspiracy
to deprive Petitioner of his Federally protected Rights as herein
demonstrated

### BONDING

This action is hereinafter 'Bonded' by the Administrative Claim
for Damages filed in the Office of the Director of Torts, Civil Division
Department of Justice, Registration Security No. 7006 2150 0004 7627
4258 in the amount of $12,000,000.00 USD.

1.

### JURISDICTION

This Court has subject matter jurisdiction over this matter,
pursuant to 28 U.S.C. § 1651 'ALL WRITS ACT'. This Court also has
pendent jurisdiction over the Common Law violations that were tacitly
admitted to by Respondent in the State of Massachusetts, and there is
diversity of Citizenship.

### VENUE

Venue is apprpriate in this Judicial District under 28 USC § 1391(b),
because the Respondent, Kenneth W. Kaiser (SAC) resides here, and a
substantial part of the events giving rise to this claim occured here.

### PARTIES

Petitioner, Michael Francis Murray, is a citizen of Massachusetts
state and was domiciled within Massachusetts at all times material to
the events giving rise to this Writ of Error Coram Nobis, and continues
to be prejudiced by the 'bad acts' attested to.

Respondent, Kenneth W. Kaiser is the Special Agent in Charge (SAC)
of the Boston Field Office of the Federal Bureau of Investigation,
located at One Center Plaza, Suite 600 Boston, Massachusetts 02198. In
that capacity, he is the Successor and / or Assign of the SAC who
occupied that Office during April of 1983.

Respondent, UNITED STATES of America is located in Washington D.C..

2.

ADMINISTRATIVE EXHAUSTION

Petitioner has exhausted his administrative remedy(ies) in the following manner to wit;

1. On or about January 2nd, 2007, Petitioner sent to Kenneth W. Kaiser (SAC) the following documents via Certified Mail (RRR) No. 7005 1820 0004 3421 1897 to wit;

'COVER LETTER'

'ACTUAL AND CONSTRUCTIVE NOTICE'

'ARTICLE I REDRESS OF GRIEVANCE UNDER NINTH AMENDMENT RESERVATIONS'

This attempt at an equitable remedy required a timely response of ten (10) days.

2. Kenneth W. Kaiser (SAC) failed / refused to respond in a timely manner and chose to remain silent.

3. On or about January 30th, 2007, Petitioner sent to Kenneth W. Kaiser (SAC) the following documents via Certified Mail (RRR) No. 7005 1820 0000 0379 9090 to wit;

'NOTICE OF FAULT / OPPORTUNITY TO CURE'

4. Kenneth W. Kaiser (SAC) failed / refused to respond in a timely manner and chose to remain silent.

5. On or about March 22nd, 2007, Petitioner sent to Kenneth W.Kaiser (SAC) the following documents via Certified Mail (RRR) No. 7006 2150 0004 7648 0741 to wit;

3.

'NOTICE OF DEFAULT'

6. On or about March 26th, 2007, Petitioner sent the following documents to Kenneth W. Kaiser (SAC) via Certified Mail (RRR) NO. 7006 2150 0004 7648 0970 to wit;

'AFFIDAVIT OF NON RESPONSE'

7. Kenneth W. Kaiser (SAC) has tacitly agreed with Petitioner that perjury and fraud were committed by agent(s) of the Federal Bureau of Investigation for the purpose of obtaining a conviction in case No. 83-00102-03-S, through the use of perjured testimony and the withholding of critical exculpatory (discoverable) evidence in contradiction to Petitioner's Due Process Rights.

8. Kenneth W. Kaiser (SAC) by and through his 'Default' has tacitly agreed to waive any claim of an immunity defense and has agreed to not argue and/or controvert any future filings re this matter.

CORAM NOBIS PROCEDURAL EFFICIENEY

Writ of Coram Nobis is a procedural tool whose purpose is to correct errors of fact only, and its function is to bring before the court rendering the judgment, matters of fact, which, if known at the time of the judgment as rendered, would have prevented its rendition. Its function is to bring the attention of the court to, and obtain relief from, errors of fact, such as a valid defense existing in the facts of the case, but which, without negligence on defendant's part, was not made known, either through duress, fraud or excusable mistake, where facts did not appear on the face of the record, and were such as, if known in season, would have prevented rendition of the judgment questioned.

4.

The essence of the Common Law remedy of Coram Nobis is that it is addressed to the very court which renders the judgment in which the injustice is alleged to have been done.

Federal Courts are empowered to grant Writs of Coram Nobis by the "All Writs Statute" (28 USC § 1651). This Statute provides that all Federal Courts may issue all Writs necessary and appropriate in aid of their jurisdiction, and agreeable to the usages and principles of law. Writs of Coram Nobis were not superceded by the enactment of the Federal Statute 28 USC § 2255 providing post - conviction relief for Federal Prisoners.

It is essential to the availability of Coram Nobis that the fact relied upon for relief was un-known to Petitioner or Petitioner's counsel at the time of the trial and could not by the exercise of reasonable diligence have been discovered by the applicant, or the applicant's counsel and presented to the Court.

There are three (3) generally accepted characteristics for granting the Writ of Coram Nobis, they are as follows;

1. error of fact

2. un-known at the time of trial

3. of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding.

The United States Supreme Court resurrected the Writ in the MORGAN decision (98 L.Ed 248) but limited its use to "circumstances compelling such action to achieve justice."

There is a further characterization which has been adopted by the 7th, 1st, 2nd, 3rd, 5th & 8th Circuits, that a harm must meet before it can be considered a civil disability, sufficient to warrant Coram Nobis relief;

5.

1. The disability must be causing a present harm

2. The disability must arise out of the erroneous conviction.

3. The potential harm to the Petitioner must be more than incidental.

In this instant matter, the ongoing results of the 'bad acts' are prejudicing Petitioner as this conviction obtained through perjured testimony and fraud has enhanced a sentence Petitioner received in an un-related matter (Case No. 91-10305-WGY) in the United States District Court, District of Massachusetts in Boston.

## HISTORICAL FACTS BY AFFIDAVIT

1. On or about April 6th,1983, Michael Francis Murray, hereinafter, 'Petitioner' and others were arrested in Boston, Massachusetts by agents of the Federal Bureau of Investigation and the Drug Enforcement Agency.

2. Immediately upon arrest, Petitioner and James Carter were placed in an automobile by F.B.I. Agent, Brendan Cleary and D.E.A. Agent Al Keanney [sic] and transported from Northern Avenue in Boston to Petitioner's warehouse at 345 D Street in South Boston.

3.Upon arrival at approximately 2:20 PM, Petitioner and James Carter while handcuffed in the rear seat of said vehicle, witnessed numerous agents making a warrantless 'break-in' of the premises, using a tire iron that was retrieved from the trunk of one of the attending agents.

6.

4. Upon making what was later termed a 'protective sweep' while in the presence of Assistant United States Attorney, Gary Crossen and 'Noticing' what appeared to be contraband in plain view, the entry agents artfully existed the warehouse and re-secured the door, then kept the building under constant surveillance, effectively seizing the property at that time. No one was inside the building, nor were any additional arrests made at that time

5. At this time, Petitioner and James Carter were transported, along with four (4) others who were arrested at various locations operating vehicles used in the transportation of marijuana to the Offices of the Drug Enforcement Agency. These individuals were the following;

        1. Arthur 'Bucky' Barrett

        2. John 'Jake' Rooney

        3. Christopher Moscatiello

        4. Steven King

6. The lead case agents, Brendan Cleary FBI and Al Keanney DEA and others then went to the Office of the United States Attorney with Assistant United States Attorney, Gary Crossen, whereupon some seven (7) hours later they completed crafting and Affidavit to support a search warrant, which they intentionally neglected to inform the attending Magistrate, Joyce London Alexander of the initial 'break-in.' NONE of the informant information they relied upon in their Affidavit referenced any activity of Petitioner.

7.

7. Agents then at approximately 10:30 PM that evening, returned to the warehouse with various media now in tow and re-created the earlier 'break-in' and purported it to be the initial 'lawful' entry.

8. This deliberate deception would have survived any further scrutiny had Petitioner and his co-defendants reached a negotiated plea agreement. However, Petitioner chose to exercise his Right to a jury trial, whereupon what he witnessed that day on April 6th,1983 was vigorously examined by lead defense counsel, Brian McMenimen, Petitioner's Counsel, Richard Garguilo and Martin Weinberg.

9. This case proceeded through the District Court, docketed as No. 83-00102-03-S and was presided over by the late Judge Walter J. Skinner. Petitioner was charged with violation(s) of Title 21 USC §§ 841, 846 conspiracy to possess with intent to distribute marijuana.

10. Prior to trial, One of Petitioner's co-defendants, Arthur 'Bucky' Barrett was kidnapped, tortured and murdered. His remains were concealed in a make shift grave, which was later un-covered with the aid and cooperation of a Mr. Kevin Weeks.

11. Mr. Weeks was described by Government agents as a 'Lieutenant' in the James 'Whitey' Bulger, Steven 'Rifleman' Flemmi crime organization.

12. During the course of Petitioner's trial in this matter, Agent(s) Brendan Cleary and Al Keanney were vigorously cross-examined by defense attorneys as they occupied positions analogous to 'lead agents.'

8.

13. Mr. Cleary testified, under oath to following Arthur Barret and John Rooney on April 6th, 1983 from Northern Avenue in Boston toward what was then the Southeast Expressway, whereupon they proceeded South to the Neponset Circle exit and wound their way to an address on Sylvester Road in Dorchester.

14. Agent Cleary testified he and Agent Keanney observed 'Barrett' and 'Rooney' unloading the contents of a white van into a garage at that address.

15. Upon completion, 'Barrett' and 'Rooney' left the premises and re-traced their route back North on the expressway toward Boston.

16. With Agent(s) Cleary and Keanney now conducting this surveillance of 'Barrett' and 'Rooney,' Agent Cleary testified he chose to exit the expressway at Columbia Circle and break off his and Keanney's surveillance of 'Barrett' and 'Rooney' and for no apparent reason, took a convuluted route back to Northern Avenue weaving his way through a number of side streets in South Boston, where he and Agent Keanny 'Noticed' a van resembling one owned by Petitioner from a particular characteristic of a 'ladder rack' on the roof parked adjacent to a warehouse at 345 D Street in South Boston. It was from this un-explained course of events and the resulting good fortune of Cleary and Keanney that defense counsel agressively pursued their questioning as to how these agents could have possibly dropped their surveillance and pursued this detour back to Northern Avenue.

9.

17. None of the defense attorneys, nor none of the defendants believed this testimony to be even remotely plausible, but were unable to elicit the truth at that time of their examination of the witnesses.

18. Mr. Cleary and Mr. Keanney maintained their tail of good fortune and Petitioner was found guilty by the jury, based almost exclusively on the testimony of these lead agents.

19. On March 19th,1984, Petitioner was sentenced to a term of imprisonment of four (4) years and fined $15,000.00.

20. A 'Notice of Appeal' was timely filed and docketed as Case No. 84-1263.

21. Appeal was argued before the First Circuit Court of Appeals, Chief Judge Campbell, Circuit Judge Breyer and Senior District Judge, Weigel on October 5th,1984.

22. On August 6th, 1985 an 'ORDER' was entered affirming the decision of the District Court and Cited as 771 F.2d 589 (1985).

23. Petitioner at all times material to these proceedings remained on bail pending the decision of the Appeals Court, whereupon he was 'ORDERED' to self-surrender to the Bureau of Prisons at the minimum security facility in White Deer, Pennsylvania (i.e. Allenwood Camp).

10.

24. Upon the decision of the Appeals Court, a Writ of Certiorari was then filed in the United States Supreme Court and docketed as No. 86-995.

25. The Writ of Certiorari was granted and argued before the Court on December 8th, 1987.

26. The Writ was decided on June 27th, 1988.

27. The Supreme Court vacated the judgment(s) and remanded the case to the First Circuit, with instructions to remand to the District Court for further findings, in an opinion by Justice Scalia, J., joined by Justice(s) Rehnquist, White and Blackmun. (Justice(s) Brennan and Kennedy did not participate) in the decision published at 101 L.Ed.2d 472.

28. Upon this remand, Petitioner was once again released on bail from the Federal Correctional Institution at Ray Brook, New York and returned home to await a hearing in the District Court.

29. Upon remand, the District Court, (JUdge Skinner) issued an 'ORDER' modifying the earlier sentence.

30. This matter was resolved by agreement to spend the balance of time (some 9 months), coupled with the seven (7) months of prison time at the Coolidge House in Boston. The total amount of time credited would be (16) months which is 1/3 of the original (48) months, which under pre-sentencing Reform Act (SRA) Petitioner was parole eligible.

11.

Pennsylvania State )
                         ss      VERIFICATION
Union County           )

BEFORE ME, _Christine R Vandine_____, a Notary Public in and

for the State of Pennsylvania appeared Michael Francis Murray and upon

proper proof of identification attested and affirmed that the information

contained in his Affidavit portion of a Writ of Error Coram Nobis

enumerated as Numbers 1-30 are true, correct, certain and complete, they

are based upon his first hand knowledge of the events and his best

recollection of the same. On this _21_ day of _June_____

A.D. 2007.


_____Christine R Vandine_____

Notary Public

    NOTARIAL SEAL
    Christine R. Vandine, Notary Public
    Gregg Twp., Union County
    My commission expires February 9, 2008

My Commission Expires:


[SEAL]


12.

## ISSUES PRESENTED

Petitioner was convicted and sentenced upon the intentional deception of the testifying agents, which began by the intentional deception of Magistrate Joyce London Alexander, culminating in the perjured testimony of at least Brendan Cleary and Al Keanney and other un-known agents.

This conspiracy that defrauded the Court, defendant's counsel, the Grand and Petit Jury(ies) and the intentional withholding of discoverable evidence, was a common scheme designed with fraudulent intent to mask the real source of the information possessed by the agents concerning the warehouse at 345 D Street in South Boston of being that of James 'Whitey' Bulger. If this deception was known at the time and brought to the attention of Judge Skinner, undoubtedly would have declared a mistrial and the question remains if he even would have allowed these agents to testify at any future hearings regarding this matter.

Without the testimony of Cleary and Keanney, Petitioner would never have been judged guilty in this matter.

Petitioner states some 24 years later, with un-mistakeable clarity, that through the publication of a Civil Action for wrongful death titled Mc Intyre .v. U.S., 447 F. Supp 2d @ 54 uncontrovertable evidence has been entered on the record demonstrating the deceit, fraud, perjury and conspiratorial techniques employed by Government agents to procur a conviction and enhance the careers of 'Bulger' and 'Flemmi' allowing them to continue to conduct their criminal business as usual, with the Government's blessings.

13.

This deception by the Government, directly lead to the kidnapping, torture and murder of Arthur 'Bucky' Barrett.

The Mc Intyre case demonstrates the following;

At page(s) 88-89 "on September 23, 1982, 'Flemmi' was closed as an informant..." "In April of 1983, (the same time as agents received the information of Petitioner's warehouse and subsequent raid) FBI Agent John Connolly sought to have Flemmi's status as an informant officially re-opened..."

At page 91, it is demonstrated that Agent Brendan Cleary, (who represented himself at Petitioner's case as a member of the bank robbery task force) is now shown conducting an interview with 'Bulger and Flemmi' concerning several murders. Said interview was arranged by Agent John Connolly in November of 1983.

At page 94, "in approximately April of 1983, Bulger learned that a fellow denizen of the Boston criminal underworld Joe Murray, was importing drugs into South Boston without approval of, and payment of tribute to Winter Hill. In retaliation, Bulger provided information to Connolly about the warehouse in South Boston where Murray was storing a shipment of marijuana. The FBI seized the marijuana" EX 12, at MCN016-1117-1118. (Flemmi June 6th, 2006 Tr. at 63-65; Weeks June 8, 2006 Tr. at 80-83 EX 3, at 23.

14.

At page 94, Footnote [70] Bulger had effectively used the FBI to do his dirty work by striking out at Murray, who dared conduct criminal business in South Boston without the blessing of the Winter Hill, and without paying a steep price for that "blessing."

At page 99, another FBI Agent Roderick Kennedy offered his knowledge of a Murray / Bulger connection. "Kennedy had discussions with Brady more than one year after Bulger had reported Murray's warehouse of marijuana to the FBI and the marijuana had been seized."

## REQUEST FOR AN EVIDENTIARY HEARING

If, upon review of the record(s) and the enclosed documents, this Court has any doubt that Petitioner has not clearly and convincingly established that his conviction in Case No. 83-00102-03-S was based upon fraud, deceit, perjured testimony and the intentional withholding of discoverable evidence in a common scheme and artifice designed to cover up / conceal the 'true' source of the information they relied upon during the pendency of this investigation and subsequent proceedings including the seizures, trial and appeal of Petitioner. It is respectfully requested that this Honorable Court schedule an evidentiary hearing whereupon the following witnesses can be subpoened to offer testimony under oath as to what and when they knew of this scheme to determine the depth of the Civil liabilities in this matter.

15.

The list of potential witnesses are as follows;

Assistant United States Attorney Gary Crossen

Former FBI Agent John Connolly

Former FBI Agent Brenden Cleary

Former FBI Agent John Morris

Former FBI Agent John Newton

Former FBI Agent Roderick Kennedy

Former DEA Agent Al Keanney

Attorney Brian Mc Menimen

Attorney Richard Garguilo

Attorney Martin Weinberg

FBI Informant Steven Flemmi

FBI Informant James 'Whitey' Bulger

FBI Informant Kevin Weeks

The appearance of these and other known and un-known individuals would be able to offer testimony under oath, pursuant to the powers of this Court to subpoena and/or writ to a scheduled hearing to determine who is responsible for the injuries and damage to Petitioner.

By and through Petitioner's Administrative Remedy, Special Agent, Kenneth W. Kaiser by his 'Default' has tacitly admitted to the injuries and damages caused by the 'bad acts' of the agents in this matter. He has agreed to waive any claimof an immunity defense and has agreed to not argue and/or controvert any future filings re this matter.

16.

## IN CONCLUSION

Petitioner, respectfully requests that based upon all of the facts and statements as made herein, along with all of the records in the Government's possession detailing the debriefings of 'Flemmi' and 'Weeks' that a determination be made nunc pro tunc to vacate the conviction of Petitioner in Case No. 83-00102-03-S for FRAUD UPON THE COURT, as FRAUD vitiates all that it comes in contact with. There may never be an accurate accounting of the individuals involved, but the ongoing civil disability it imposes upon Petitioner demands its immediate nullification.

There are no facts left to dispute, Petitioner and SAC Kaiser are in agreement as to the injuries caused by these acts.


## PRAYER AND REMEDY REQUESTED


Petitioner prays that, if upon this Court's review of the record and this Writ of Error Coram Nobis, it is determined that the record demonstrates sufficiently that the Writ should be granted without an evidentiary hearing, and the judgment vacated for FRAUD upon the Court, Petitioner respectfullt requests that this Court issue a Writ of Habeas Corpus to the United States Marshall Service for the production of Petitioner, who is in custody at the Low Security Correctional Institute at White Deer, Pennsylvania for the purposes of re-sentencing as the disability / prejudice imposed by the 'TAINTED' conviction in Case No. 83-00102-03-S continues to impact Petitioner and presents a liberty interest.

17.

It is for this relief that Petitioner prays, as well as any additional relief that this Court deems due and owing.

Dated this 25th day of June A.D.2007.

Respectfully Presented,

Michael Francis Murray, Petitioner / Affiant

18.

CERTIFICATE OF SERVICE

I, Michael Francis Murray, do hereby attest and affirm that I caused a true and correct copy of the enclosed to be delivered by hand, to the following to wit;

Kenneth W. Kaiser (SAC)
One Center Plaza, Suite 600
Boston, Massachusetts 02198

&

Office of the UNITED STATES Attorney
One Courthouse Way
Boston, Massachusetts 02210

The above facts and statements are true, correct, certain and complete and are not meant to mislead, further they are made knowing the penalty for bearing false witness.

Dated this 25ᵗʰ day of June A.D.2007.

Michael Francis Murray, Petitioner

19.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Michael Francis Murray ) | In re; Case No. 83-00102-03-S |
| Petitioner ) | |
| .v. ) | ORDER |
| UNITED STATES OF AMERICA ) | |
| Respondent ) | |

## ORDER

This matter having come before the Court is scheduled for hearing on

_____ day of _____ A.D.2007.

It is further ORDERED that Petitioner, Michael Francis Murray appearing in

Propria Persona be transferred from the Low Security Correctional Institution at

White Deer, Pennsylvania by the United States Marshall Service for appearance

before this Court no later than, _____

Dated this _____ day of _____ A.D.2007.

_____

United States District Judge

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

### AFFIDAVIT OF BRIAN McMENIMEN

I, Brian McMenimen, being duly sworn, depose and say:

1.    I am an attorney and member of the bar of the United States District Court for the
District of Massachusetts.

2.    From approximately 1976 until approximately 1986, I practiced law with attorney
Richard Gargiulo, and our law firm, located in Boston, Massachusetts,

was known as Gargiulo and McMenimen.

3.    In or about April 1983 I was retained by an individual named James Carter, who
was arrested and charged with conspiracy and with substantive violations of Title 21 of
the United States Code.

4.    Mr. Carter was arrested along with Michael Murray, who was charged with
similar offenses arising out of the same allegations.

5.    My partner at that time, attorney Gargiulo, represented Mr. Murray in that case.

6.    Several other persons were arrested and charged with Mr. Carter and Mr. Murray
in an indictment returned against them in the United States District Court for the District
of Massachusetts, alleging conspiracies and substantive offenses against the United
States, all arising from the alleged events and transactions that led to Mr. Carter and Mr.
Murray's arrest in April 1983. One of these men was Joseph Murray, Michael Murray's
brother.

7.      Those individuals were represented by attorneys whom I knew personally, and as for most of the attorneys, I had worked with them previously and/or since then, in other criminal matters.

8.      All defense counsel in this matter worked in close cooperation with each other on behalf of their respective clients.

9.      The cooperation I refer to above included a comprehensive exchange of information among counsel, and an agreement to work closely to challenge the legitimacy of the several searches conducted by government agents in the case, to challenge the legitimacy of the arrests of the several defendants, and to challenge the sufficiency of the government's proof as to each of the defendants.

10.     The indictment was assigned to United States District Court Judge Walter Jay Skinner. *See* United States v. Murray, et al., Docket No. 83-00102-03-S.

11.     The principal "case agents" for the government in this indictment were Special Agent Brendan Cleary of the Federal Bureau of Investigation, and Special Agent Alfred (or Albert) Keaney of the Drug Enforcement Administration.

12.     While I have not reviewed the transcript of the suppression hearing and the trial before Judge Skinner in a long time, I distinctly remember that S/A's Cleary and Keaney testified that on the day of Mr. Carter and Mr. Murray's arrest, they were driving along Northern Avenue in South Boston when, fortuitously, they observed two of the other defendants in this matter, Arthur Barrett and John Rooney, in or next to Mr. Rooney's white truck, parked beside a sandwich shop, "Santoro's" I believe it was called, that was situated on Northern Avenue at that time.

13. I recall that Agent Cleary testified that they were just driving around Boston at the time, "cruising the precinct", as I remember him describing their actions, not looking for specific individuals or for specific criminal activity.

14. It was their testimony that the observation of Barrett and Rooney was a matter of happenstance.

15. They testified that they decided to watch Mr. Rooney and Mr. Barrett. I recall that Agents Cleary and Keaney both indicated that they were surprised when Mr. Murray, whom they both recognized, drove up to Barrett and Rooney in his blue truck, with Mr. Carter, whom they did not know, sitting in the passenger seat.

16. They testified that they soon saw Murray and Carter get out of the blue truck and drive off in Rooney's white truck, which they followed to a warehouse in South Boston.

17. I recall that they testified that the white truck pulled into the warehouse and drove out a short time later, with Murray and Carter in it, and that they followed it back to Northern Avenue.

18. I recall they testified that they observed Carter and Murray leave the white truck with Barrett and Rooney and reenter Mr. Murray's blue truck and depart.

19. At about this point, both Agents Cleary and Keaney testified, in substance and effect, that they began to suspect that they had just witnessed a drug transaction, that is, the exchange of a controlled substance, such as marijuana, as opposed to some other criminal activity. That is to say, Agents Cleary and Keaney testified that after watching the activities described above, they suspected for the first time that they were observing the commission of a controlled substance crime or crimes.

20. Subsequent events strongly indicate that this testimony could not have been completely truthful.

21. Mr. Murray and Mr. Carter were acquitted of some of the charges in the indictment, and convicted of conspiring with each other to violate 21 USC. Ultimately, after their convictions were twice vacated by the United States Supreme Court, the cases against Mr. Carter and Mr. Murray were disposed of by plea agreement.

22. Years later, I learned, along with many others, of James Bulger and Stephen Flemmi's status as informants for the United States, which was revealed in testimony during hearings before now Chief Judge Mark Wolf in the United States District Court.

23. Recently, Mr. Murray wrote to me from prison, and invited my attention to the decision and opinion of Judge Reginald C. Lindsay in McIntyre, et al. v. United States, reported at 447·F. Supp.2d 54 (D. Mass, 2006).

24. Judge Lindsay's opinion in that case contains his finding of fact that the source of the information concerning the warehouse in South Boston and its use for storing and transferring marijuana, was James Bulger's report as an informant to Special Agent John Connolly of the FBI, who was Agent Cleary's colleague. *See* 447 F. Supp. 2d, at 94.

25. No one ever informed defense counsel in our case that the several searches and seizures, and indeed the commencement of the investigation leading to the prosecution of Mr. Murray and Mr. Carter, were based upon information furnished to the government by its informant, Mr. Bulger.

26. Based upon my understanding of the state of the law in 1983 and following, I believe that the government had an obligation to disclose to the defense that the source of the information leading to the apprehension and prosecution of Mr. Murray and the others

was James Bulger, and not simply a fortuitous observation of Barrett, Rooney, Murray and Carter, as the agents asserted in their testimony before Judge Skinner.

27. Based upon my recollection of the testimony of the government agents at the suppression hearing and trial, as contrasted with the facts as found by Judge Lindsay in McIntyre v. United States, *supra*, I have to conclude that the agents did not testify truthfully about how they learned of the ongoing marijuana operation that was the basis of the prosecution in United States v. Murray, et al, *supra*.

28. The information that Mr. Bulger was the source of the government's investigation of Murray, Carter, and the others was never disclosed to the defendants or their counsel.

29. I believe that, had this information been disclosed, it would have had a substantial impact upon the prosecution and that it would have had a substantial effect upon the way the defense would have been conducted.

30. Finally, I believe that the defendants were substantially prejudiced by the Government's concealment of this information.

**SIGNED UNDER THE PENALTIES OF PERJURY**

Date: 7/11/07

Brian McMenimen

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL FRANCIS MURRAY,        )
                Plaintiff,     )
                               )
        v.                     )       C.A. No.  05-11891-MLW
                               )
ALBERTO GONZALES, UNITED STATES )
ATTORNEY, et al.,              )
                Defendants.    )

                            ORDER

WOLF, C.J.

On May 21, 2006, the court dismissed this case and enjoined

the plaintiff from filing further actions without leave of court.

Subsequently, the plaintiff filed a document captioned, "Notice

of Fault and Opportunity to Cure and Contest Acceptance," which

does not include the number for this case but does reference the

May 21, 2006 order. As the plaintiff may not have understood the

ramifications of the previous order, it is hereby ORDERED that:

1.    The Clerk shall docket the Notice of Fault as part of

this case, civil action number 05-11891; however, no further

action shall be taken.

2.    The plaintiff is ENJOINED from filing any further

pleadings or documents, including letters or motions, in this

action. This Order does not prohibit the plaintiff from

exercising any appeal rights he may have in this matter. Any

documents which are submitted for filing by the plaintiff in

violation of this Order shall not be filed or docketed by the

Clerk's Office, but shall be returned by the Clerk's Office to

the plaintiff.

3.    The plaintiff is ENJOINED from filing any additional or
new claims, cases, complaints, or other documents in this Court,
in any manner, way or form, without first obtaining the prior
written approval of a judge of this Court.  If the plaintiff
undertakes to file any additional papers in this Court, he shall
file a written petition seeking leave of court to do so.  The
petition must contain (i) a copy of this Order; (ii) the papers
sought to be filed; and (iii) a certification under oath that
there is a good faith basis for their filing.  Any papers that do
not meet this requirement shall be returned by the Clerk's Office
to the Plaintiff.  If the papers meet this requirement, the Clerk
of Court shall accept the documents, mark them received, and
forward them to a judge of this Court for action on the petition
for leave to file.


 November 22, 2006                   /s/ Mark L. Wolf
DATE                            UNITED STATES DISTRICT JUDGE

2

Michael Francis Murray [13867-038]

c/o P.O.B.1000

White Deer,Pennsylvania 17887

Clerk, United States District Court
One Courthouse Way
Boston, Massachusetts 02210

Re; Case No.83-00102-03-S

### PRAECIPE TO THE CLERK

Dear Clerk,

Enclosed for filing in the above referenced matter please find the following documents to wit:

1.MOTION FOR LEAVE OF THE COURT

2. MOTION FOR AN INSTANT HEARING

3. EMERGENCY APPLICATION FOR A WRIT OF ERROR CORAM NOBIS

Upon your receipt, please file stamp the extra cover sheet I have enclosed and return the same to the Bearer. The mailing addresses of the Respondent(s) are;

Kenneth W. Kaiser (SAC)
One Center Plaza, Suite 600
Boston, Massachusetts 02198

&

UNITED STATES OF AMERICA
WASHINGTON, D.C.

In closing, I sincerely thank you for your time and efforts re this important matter.

Dated this 25th day of June A.D.2007.

Michael Francis Murray, Petitioner

Page 1 of 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 JUL 13 P 1: 48

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| Michael Francis Murray | ) | |
| Petitioner | ) | In re; Case No. 1:05-CV-11891-MLW |
| .v. | ) | Motion for Leave of the Court |
| UNITED STATES OF AMERICA | ) | |
| Respondent | ) | |

| | | |
|---|---|---|
| Pennsylvania State | ) | Equity, Admiralty/ Maritime |
| | ss | |
| Union County | ) | Venue and Jurisdiction |

COMES NOW, Michael Francis Murray,hereinafter,'Petitioner' in the above referenced action, appearing specially and not generally, in propria persona and moves this Court for Leave to file the attached "Writ of Error Coram Nobis" and attached supporting documents. In compliance with the Court's Order,(i) a copy of this said 'Order'is attached,(ii) the papers sought to be filed are included and incorporated herein by reference, (iii) Petitioner herein, attests and affirms, under his un-limited commercial liability that there is a 'Good Faith' basis for the filing of this action in this matter.

The attached action, demonstrates another incidence in a long line of Government mis-deeds, performedin conjunction with its relationship with James 'Whitey'Bulger, Stephen Flemmi, et al. and how it damaged Petitioner and continues to present a Civil disability causing injury to Petitioner.

Dated this _25 ᵉᵗ_ day of _June_ A.D.2007.

Sincerely Presented,

_Michael Francis Murray_

Michael Francis Murray, Petitioner
c/oP.O.B. 1000
White Deer,Pennsylvania 17887

FILED
UNITED STATES DISTRICT CLERKS OFFICE

DISTRICT OF MASSACHUSETTS
2001 JUL 13  P 1: 48

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| Michael Francis Murray | ) | |
| Petitioner | ) | MOTION FOR AN INSTANT HEARING |
| .v. | ) | Case No. 83-00102-03-S |
| Kenneth W. Kaiser (S.A.C.) | ) | |
| Boston Office of the F.B.I. | ) | |
| & | ) | |
| The UNITED STATES of America | ) | |
| and all other Conspirators | ) | |
| Known and Un-Known | ) | |
| Respondent(s) | ) | |

| | | |
|---|---|---|
| Pennsylvania state | ) | Equity, Admiralty / Maritime |
| | ss | Venue and Jurisdiction |
| Union County | ) | |

COMES NOW, Michael Francis Murray, appearing specially, in propria persona, ex parte and requests that this Honorable Court, due to the ongoing Civil disability imposed upon him by an un-lawful conviction details of which are set out in the attached 'Writ of Coram Nobis.'

Petitioner is incarcerated and continues to be damaged daily by any un-necessary delays.

Sincerely Presented,

*Michael Francis Murray* 6/25/07

Michael Francis Murray

Page 1 of 1